# Watson *v.* McManus, Appellant.

*Assignment—Equitable assignment—Municipality—Municipal contract—Injunction—Equity.*

On a bill in equity against a municipal contractor and a city for an injunction to prevent payment by the city to the contractor of moneys due under contracts, it appeared that the contractor had assigned to the plaintiff all his right, title and interest to all moneys, warrants and payments of any kind thereafter receivable from the city on account of any contracts between the contractor and the city. The assignment further provided that said sums of money should be held by the city for the use of and as belonging to plaintiff, and the plaintiff was constituted irrevocably attorney to collect the same. The city had notice of the assignment and made no objection to it. Thereafter the contractor recovered a large judgment against the city. After this an equity proceeding was instituted between the plaintiff and the contractor for an accounting. *Held,* that the plaintiff was entitled to an injunction to restrain the city from making any payment to the contractor until the suit for an accounting was determined, and a further order made.

Argued Jan. 10, 1908. Appeal, No. 220 Jan. T., 1907, by defendants, from decree of C. P. No. 1, Phila. Co., Dec. T., 1903, No. 4,416, on bill in equity in case of James V. Watson v. Michael McManus, the City of Philadelphia and John M. Walton, Controller of the City of Philadelphia. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for an injunction. Before BEITLER, J.

From the record it appeared that on January 1, 1897, Michael McManus granted, assigned, transferred and set over unto James V. Watson all his right, title and interest, claim and demand in and to all " moneys, bills, warrants and payments of

any kind whatsoever which now are or hereafter to be receivable, payable or due to me from the city of Philadelphia, on account of or by reason of any contract or contracts I now have or may hereafter have with the said city of Philadelphia during the year 1897.

" The intention of this assignment being that said sums of money and all Bills, Warrants and Payments as aforesaid Due and Payable or which may hereafter become Due and Payable by said City to me on account of said Contracts shall be held by said City for the use, Benefit and Disposal of and as Belonging to the said James V. Watson." James V. Watson was irrevocably constituted attorney to collect said moneys.

At December Term, 1898, No. 547, McManus recovered a judgment against the city of Philadelphia for $29,842.67, being moneys due under contract dated May 7, 1897. On July 17, 1899, McManus filed a bill against Watson in C. P. No. 4, Philadelphia County, June Term, 1899, No. 406, praying for an accounting. Watson filed a cross bill. The case was proceeded with so far that McManus' bill was dismissed, and the litigation continued under the cross bill. On February 20, 1904, Watson filed the present bill against McManus praying for an injunction to restrain McManus from collecting and the city of Philadelphia from paying the judgment which McManus had secured against the city, pending the determination of the suit for accounting.

During the year 1897, McManus had on hand four contracts with the city ; one known as the Queen lane coping contract, one as the Lincoln avenue grading contract and one as the School House contract.

The court found other facts to be as follows :

Finally the schoolhouse was finished and the city was ready to make the final payment (less percentage reserved under the contract exceeding $3,300), and the plaintiff upon McManus' request gave him the paper, bearing date June 20, 1898, in which he agreed that " the bills stated to be due for materials furnished and wages due on schoolhouse at 13th and Porter streets are to be paid out of final warrants and reserve for the completion of said schoolhouse and the Queen lane coping and the Lincoln avenue grading contracts, said warrants to be paid to James V. Watson and he to furnish money

from them to Michael McManus sufficient for the above specified purposes."

The plaintiff agreed to advance $6,500 to finish the schoolhouse. In fact, he advanced $7,350. He received the warrant for $20,941.50, and repaid himself the $7,350. The balance he paid on schoolhouse bills, but there was still about $10,700 unpaid. When the parties to whom these moneys were owing called on Mr. Watson, he showed them the paper of June and told them that when he got the "reserve" on the schoolhouse contract and the balances due on the other contracts, he would settle their bills.

In November a warrant was drawn for grading. This was lodged in the controller's office for counter-signature. An order for its delivery to McManus was given him by the department of education. This McManus refused to let Watson have, unless he would agree to pay therefrom all the schoolhouse bills. This plaintiff refused to do, but reiterated his intention of carrying out his contract to pay out of the aggregate of moneys to be received by him all the debts on all the contracts. During a part of the grading work he had been paying all the bills, and he wanted reimbursement from the warrant for his outlays for these payments for work done on the grading. Plaintiff finally agreed, in order to induce McManus to give him the order for the warrant, that he would pay half of it to the claims on the schoolhouse. McManus refused to do this, and thereafter neither he nor Mr. Watson got any more warrants on account of grading or the other two contracts.

The city controller had the Lincoln avenue warrant, but he likewise had McManus' assignment of all warrants and payments coming due to him to Mr. Watson. The city controller could not pay to McManus and would not pay to plaintiff until the order for the warrant indorsed by McManus was turned into his office.

McManus contends that Watson should have paid every debt due on the schoolhouse when the schoolhouse was finished. Such, however, was not Mr. Watson's agreement. It is plain and cannot be misunderstood that Mr. Watson therein agreed that "the bills stated to be due for materials furnished and wages due on schoolhouse at Thirteenth and Porter streets are

· to be paid out ·of final warrants and reserve for the completion of said schoolhouse and the Queen Lane Coping and the Lincoln avenue grading contracts, said warrants to be paid to ·James V. Watson and he to furnish money from them to Michael McManus sufficient for the above specified purposes."
, · Mr. Watson testified that he has always stood ready and willing and is yet ready and willing to carry out this agreement.   McManus testified that Watson said he would not carry out his agreement.   I had the witnesses before me.   I · heard their testimony.   I noted their bearing and I have no hesitancy in stating that where McManus contradicts Watson, : I give entire credence to the latter and disbelieve the former. I therefore have no hesitation in finding that at the time Mc-Manus refused to let Watson have the warrant due from the ·city, his refusal was unjustified, and Mr. Watson had nothing to indicate an intention not to carry out his agreement.   He ·was entitled to that warrant.   His offer to pay $5,000 therefrom to the creditors of McManus on the schoolhouse contract was more than his agreement required him to do.   Had McManus acceded to it, his creditors would have received that $5,000 and. subsequently the $3,300 " reserve" on the schoolhouse contract.   These two sums would have nearly paid all that was owing.   McManus' lack of honesty and good faith in the matter is shown in this, that he subsequently collected the reserve on the schoolhouse contract by suit against the city and put it all in his pocket, paying not a cent thereof to his creditors or to his surety, but leaving the trust company to pay all the schoolhouse creditors.   Another evidence of ,his lack of honest intent is the fact that at the time Mr. Watson agreed to take the warrant then due on the Lincoln avenue contract and pay therefrom $5,000 to the creditors on the schoolhouse, McManus had a suit pending to collect the balance due on the grading contract from the city, and in that · suit, in spite of the fact that the contract expressly limited the total payments to him to $26,000, he was claiming (and his claim has been sustained by the Supreme Court) a very much larger sum.   The fact that the suit was pending, or that ·he claimed some $15,000 more than the warrant, he did not mention.

There was then, I find, no justification in fact or in law for

McManus' refusal to let Mr. Watson have the warrant. The real reason of his refusal is apparent from the testimony in the grading contract suit. Had he turned over the order to Mr. Watson for the warrant, he would have had no standing to claim from the city a sum almost three times the face of the warrant. He could not let go the order for the warrant and pursue the city for this greatly larger sum, and I find that there was an entire lack of good faith in the reasons he had then advanced and now advances for refusing to let Mr. Watson have the warrant.

Nor upon the other point in the case have I any greater difficulty in reaching a conclusion adverse to Mr. McManus' contention. The agreement made after January 1, 1898, did not abrogate the power of attorney and assignment heretobefore given by McManus to Watson and lodged with the city controller.

We then have this condition: About April 1, 1898, McManus owed Watson about $20,000.

To complete the schoolhouse contract, Watson advanced $7,350. He got $20,941.50 in a warrant from the city. He repaid himself the $7,350 and paid all the rest to the creditors on the schoolhouse, and more than $300 besides. He took over McManus' quarry as additional collateral security. and to complete the other three contracts and advanced money to run the quarry and to complete the three contracts. He did not take the contracts completely out of McManus' hands, and there was not an assignment of the contracts as the contracts exhibit an assignment. McManus' control over them was not ousted, nor anything done by the plaintiff except to finance the jobs and put a man in whom he had confidence; an employee of McManus' in the position of superintendent and paymaster.

McManus' direction and control of the grading contract is particularly referred to in the testimony of the superintendent, and it undoubtedly led to a loss by reason of breaking a bargain William M. Watson had made, and insisting upon quarry refuse being hauled from the quarry to Lincoln avenue to " fill " with.

Mr. Watson's grandson, the said William M. Watson, who had been heretofore in McManus' employ, continued in his

employ after the arrangement was made that Watson should advance money in excess of $20,000, and while he became Mr. Watson's representative in seeing that moneys Mr. Watson advanced should be expended upon the three contracts and not otherwise, neither he or Mr. Watson became McManus' assignee as concerns the three contracts. But as a matter of law I hold that McManus cannot, in the proceeding before me, avail himself of the fact that he assigned to Mr. Watson, if what he did amounted in law to an assignment. The city might take advantage thereof, but McManus cannot.

There is no moral right in McManus to have any of the payments due by the city on any of the contracts. He has by suit collected the reserve on the schoolhouse contract and applied it to his own uses. Whether he has collected the balance on the two contracts at Queen lane reservoir did not appear in evidence. He testified, though, that at the time the suit on the Lincoln avenue contract was pending, he had sixteen suits against the city, and they may have been included in that number.

Now we have the balance due on the Lincoln avenue grading contract judicially ascertained. Mr. Watson asks that it be paid to him. He shows that the power of attorney and assignment of January 1 assigns to him all McManus' right, title, interest, claim and demand " in and to all moneys, bills, warrants, and payments of any kind whatsoever, which now are or hereafter shall be receivable, payable or due " to McManus " from the City of Philadelphia on account of or by reason of any contract or contracts " which he, McManus, then had, " or may hereafter have with the City of Philadelphia," and Mr. Watson is constituted McManus' attorney to collect and receive the same.

### FINDINGS OF LAW.

McManus met Watson in the law department of this city in 1899. At that time he had the suit pending against the city to recover the amount he claimed to be due him on the Lincoln avenue grading contract. · That suit has resulted in his favor (211 Pa. 394). McManus now contends that Watson cannot have the relief sought by the bill filed in this case, because under Lockhardt v. The City, he could have brought suit against

the city at law to recover the balance due under the contract. The question is somewhat complicated. McManus has recovered upon the contract "reformed." In the Supreme Court opinion Mr. Justice Brown says:

"This being so, the plaintiff stands on a written contract with the city, not to be altered, varied, or departed from, but, to put it mildly, to be reformed for a mistake. Though contracts with the city of Philadelphia must be in writing, they are subject to reformation for fraud, accident, or mistake."

It is to secure the payment due on this reformed contract that the plaintiff has sought the aid of a court of equity. I cannot see how Watson could have collected by suit at law after McManus had proceeded to have the contract reformed. Surely, the city could not have been subjected to McManus' suit wherein he sought to reform the contract and to Watson's suit (McManus to his use) on the contract. Watson never possessed any right to reform the contract. He advanced moneys to do the work and to secure repayment is entitled to collect any payments due McManus, but he never had any standing in law to collect what has been, by the judgment of the Supreme Court, given to McManus. I therefore find against the defendant on this point.

The second point, that Watson cannot recover because the contract between McManus and the city prevented an assignment of it, I find against the defendant. There was in law no assignment of the contract, and if there had been, it was a matter of which the city might complain, but not McManus. The city submits itself to the decree of the court and is willing to pay whoever is determined to be entitled to the sum it owes.

On the third point, that the new agreement made after January 1, 1898, took away Watson's rights under the assignment and power of attorney of January 1, 1898, I find against the defendant. The new agreement did not affect Mr. Watson's rights under the power of attorney.

The plaintiff has been guilty of no laches. As soon as he learned that McManus' suit was pending he brought his action to prevent the city paying to McManus.

The court entered a decree as follows:

That an injunction issue restraining the defendant, Michael McManus, from collecting, or assigning, the judgment of

$29,215.19, entered in the suit of said Michael McManus v. City of Philadelphia, in the court of common pleas, No. 1, of December Term, 1898, No. 547, or taking any further steps in said suit until a final decree be entered upon the cross bill filed in the suit of James V. Watson v. Michael McManus, in the court of common pleas, No. 4, of June Term, 1899, No. 406, and enjoining the city of Philadelphia from paying the amount of said judgment until the further order of this court.

That upon final determination of the said suit upon the cross bill of James V. Watson v. Michael McManus, in the court of common pleas, No. 4, of June Term, 1899, No. 406, the parties hereto have leave to apply to this court for further order in the premises.

That a copy of this decree be filed in the case of Michael McManus v. City of Philadelphia, in the court of common pleas, No. 1, December Term, 1898, No. 547.

*Error assigned* was the decree of the court.

*F. B. Bracken,* for appellant.

*John G. Johnson* with him *George R. Van Dusen* for appellee.

Per Curiam, April 27, 1908:

This is in substance a bill of interpleader to determine the proper party entitled to be paid a sum of money due by the city of Philadelphia on a contract of the city with the appellant and assigned by appellant to plaintiff. The learned judge below found all the facts in favor of the plaintiff, and the only questions in the case are well disposed of in the finding of law by him.

Decree affirmed.